court is now in session. Good morning. The second case in our docket is number 19-10842. It's the United States of America versus Morton. Mr Beck. Thank you, Your Honor. Madam Chief Judge and may it please the court. My name is Brandon Beck and I represent Brian Matthew Morton, the appellant here today. Your honors, I plan to use about eight minutes of uninterrupted time this morning. There are two reasons why this court should reverse the district court's denial of Mr Morton's motion to suppress. First, the good faith exception does not apply because the Affian officer submitted a bare bones affidavit and misled the magistrate about the true object of the search. Second, the warrant itself is invalid as unsupported by probable cause. Your say a few words about what is at stake here and why Riley versus California should inform this court's decision. In 1926, Judge Learned Hand wrote that it's a totally different thing to search a man's pockets and use against him what they contain from ransacking his house for everything which may incriminate him. Today, the government asks you to give law enforcement the ability to do so much more. The government believes that small quantities of drugs without any indicators of drug trafficking justifies a full forensic search of a person's cell phone, which would expose the government to far more private information than the most exhaustive search of a home. The amount of power the government seeks here is striking. It stands in stark contrast to what the framers fought against when drafting the Fourth Amendment and would bring us as close to the bygone days of general warrants and writs of assistance as we have ever been. In 2001, in Kylo versus United States, Justice Scalia observed that it would be foolish to contend that the degree of privacy secured to citizens by the Fourth Amendment has been entirely unaffected by the advance of technology. In 2014, Justice Roberts, writing for the unanimous court in Riley, reminded us just how prophetic Justice Scalia had been. Riley tells us a great deal about privacy and cell phones, that cell phones are both quantitatively and qualitatively distinct from any other type of container. They're quantitatively different in how much information they carry. The storage capacity of a cell They're qualitatively different in several respects. They contain many different types of information, an address, a note, a prescription, a bank statement, a video, each revealing more than any isolated record. They also allow an individual's private life to be reconstructed through a vast amount of retrospective information. A person's home is a snapshot in time. A person's home, by contrast, contains a full view of their past and present, as well as their future aspirations, job applications, vacation plans, 401k balances. The government will say that this case has nothing to do with Riley. After all, Riley was a search incident to arrest case. After all, Riley said to get a warrant, and that's what happened here. Here's the problem. Riley is about so much more. Riley's statements about privacy are not mere platitudes. Riley tells us that a person has a heightened privacy interest in a cell phone, and it reminds us precisely what is at stake when a police officer searches a phone. Whenever Riley makes observations about everyone having a cell phone, about the officer may not know exactly on a phone where contraband is located. Riley is always using those observations to call for more privacy protection and more government restraint. And I ask you to note, whenever the government uses those same observations to justify more intrusion, not less, when Riley said the made clear that getting a warrant was not the end of the matter. A warrant must still meet the requirements of the Fourth Amendment, and the initial warrants here lacked everything the Fourth Amendment requires nexus, particularity, restraint and in total probable cause all to view the privacies of life of a person to further investigate a solved crime of simple drug possession. And to ignore these Fourth Amendment requirements would be to collapse the distinction between an arrest warrant in a search warrant, which would render Riley versus California meaningless. To be clear, the police here had cause to arrest Mr Morton. They could search his vehicle. They could interrogate him not only about drug possession, but any other suspicions they had consistent with United States versus causey. But if the nexus to the phone is nothing more than the ubiquity of phones that everyone has one, where then is the limiting principle? What would keep officers for searching anyone's phone for, say, evidence of speeding just to rummage for something else? The government will also say that we don't need to worry about the warrants infirmities that the good faith exception shields the warrants from scrutiny. Not so here. The Supreme Court held in Leon that there are four instances in which the good faith exception does not apply to are met. In this case, the affidavits here were bare bones, and the Afghan officer misled the magistrate through material omissions. And when you look closely at what happened here, it's no surprise that the warrants are both bare bones and misleading. The very reason the warrants are bare bones is because the officers were never looking for drugs. Instead, they embarked on a fishing expedition to confirm a mere hunch of something else. And we see this on page 275 of the record. What was presented to the magistrate was an afterthought, and it shows the affidavits here contain only boilerplate conclusory generalizations. They speak of all people who possess drugs, supported only by statements of training and experience in belief. This is what this court cautioned against in Broussard and what we saw in Freeman, Brown and Oglesby. And with respect to images, the affidavits are based on the false premise that Mr Morton is a drug trafficker and co conspirator. We see this on page 298 of the record. Accordingly, this court should hold that under these facts on these affidavits, the officer should never have been able to reach a cell phone at all. And at a minimum, this court should adopt the narrow panel opinion. I now welcome the court's questions. Mr Beck, Mr Beck, let's take a look at the opening panel brief that you filed in December of 2019. You refer there to what you called. I'm looking at this statement regarding oral argument, which is the first page that comes up. You referred to what you called on open question of first impression. What was that open question of first? And the word question is singular. What was your open question of first impression? Yes, Your Honor. There I was referring to the misleading the magistrate exception to, um, the good faith exception. So if that, uh, is was an open question which you thought was significant enough for oral argument, then it's not possible for, uh, the officer to lack good faith if he proceeds based on existing law and not on what you call a question. In other words, it was not. It was not clearly established law, Your Honor. And I want to I want to clarify that. I believe what your honor is referring to is United States versus Aguilar from this court in 2020, which is based on the Supreme Court's opinion in Davis versus United States in 2011. No, that's that's not what I'm referring to at all. In fact, your statement regarding oral argument discussed, uh, the pope case. My question again is if something is a question of first impression, uh, and the officer acts on the law as it then, by definition, the officer cannot be acting in bad faith as to that question. I disagree, Your Honor. When an officer is relying on a warrant and not relying on precedent. So Davis and Aguilar say an officer can rely on precedent or a statute. Here the officer was relying on a warrant. And what I meant by first impression is that this court had not decided in a first Leon exception. Well, in fact, in fact, in fact, our court first decided the opposite in Pope in the first Pope case over a dissent by Judge Jolly, in which the officer, the panel said, had intentionally misled and had not mentioned the manufacture of meth, uh, in the in the warrant application. And decided just the opposite, agreeing with Judge Jolly's initial initial dissent. So, uh, in effect, there was existing law. I don't understand why you why you say that it was a question of first impression, uh, that the officer cannot rely on the absence of our courts having decided that your honor. To be clear, Pope to did not reject the reasoning of Pope one, which is effectively the blueprint for our misleading, misleading the magistrate argument here. Pope to said that that argument was way that did not reject the argument in the now the issue, a slightly different issue or sub issue in the case, as you know, is the panel's decision that the images in the cell phone could not be looked at. Um, since there's been no precedent on that in our court, would you also agree that that's a question of first impression? I don't believe it is. I believe existing law exists to support the principles to make that argument here and for the panel to have reached the correct conclusion. So an officer in the field is just supposed to guess from the existing precedent. Even though that question had not been specifically examined by our court, the officer is just supposed to guess. And if he gets it wrong, then he's acting in in in bad faith, or at least is not acting in good faith. Is that is that right? As to the question of searching the images, I disagree with the premise of the question, your honor. In this sense, there's a separate strain of good faith exception cases where an officer is relying on existing law. This is not one of those cases here. The officer is relying on the warrant in the in the search warrant affidavit to be able to search. And it's our position that that's number one bare bones. The panel got that absolutely correct in number two, that the search warrant affidavit indeed misled the magistrate, which has existed since 1984. So in the search warrant affidavits, uh, you told us in your opening remarks, uh, that the that the affidavit was bare bones on was not really designed for evidence regarding possession or sale or receipt of of contraband. At least that's what I what I heard you say. Do you have any idea how many times those affidavits mentioned the word possession? I agree that the affidavits describe the crime of possession. Would you would you would you agree with me that that each of those affidavits mentions possession at least eight times? That means there were 24 mentions of possession in what you call the bare bones affidavits. I would I would take your representation. Absolutely, Your Honor. Here would be my response to that. The problem with taking the facts of possession in translating them into the authority to search a cell phone would collapse the distinction between an arrest warrant in a search warrant. This course described that same problem in United in 2014. So if we're relying just on the presence of a phone, we can't say just because we know a person has committed a crime. Therefore, we get to search the privacies of their life. This court even rejected that in United States versus Freeman as far back as 1982, where police officers knew with absolute certainty that a person was a high level drug trafficker. They knew that they owned a residence in California, and police officers said, based on our experience, we know that high level drug traffickers keep drugs and drug paraphernalia and business records at their home. And this court in 1982 rejected the notion that they could then use just those facts to go to the person's home to be able to search for those particular items. Are there? Are there any? Are there any questions of first impression that air still left for decision? In this case, that is questions that were properly preserved in the district court and were properly raised in your December night, December 29 December 2019 opening brief. What? What? What? What? What are the questions of first impression for us to decide today? I don't I'm not every argument I make. I'm relying on existing precedent, so I don't believe that there are questions of first impression. I think there are reached before in a published opinion, like the misleading the magistrate argument that it reached and then withdrew. But I think there was sound rationale for that in 2006. I think there's still sound rationale for it today. So if there if there are no questions of first impression, if I just understand your answer correctly, then that explains why, in opposing the petition for rehearing in bank, you did something that I've never seen in you're the winner in a published opinion, and you asked the court to what you called unpublished the opinion. Your Honor, and I was addressing perhaps concerns of this court. Certainly the government raised a claim, a very strong claim that this opinion as stands would disrupt law enforcement's ability to do its job. I disagree with that position. However, I was simply making the point that if this court is share some of those same concerns that the government has one solution, one middle ground solution would be to unpublished the panel opinion. Are you still relying on on the on what the panel called the government's concession at oral argument? Or have you abandoned that reliance? I don't need their concession. I think they're consistent. Concession is consistent with existing law. I think it was appropriate. This court can consider it or not consider it. Can I ask? I'm not sure that that, uh, answers the question. I guess I'm trying to ascertain what is what? What is your position as a council of record and as an officer of the court as to whether there was a concession, whether that concession was binding, and I particularly would be interested in knowing if there was a concession that's binding. Is it binding on all future cases for the government? Or is it? Is it binding? For example, if there's a cert petition in this case, is this a Is this a permanent concession by the government, which they now said that it wasn't? But but tell us your view. This is important, and the panel relied on. Yes, Your Honor. First, they clearly, in my interpretation, made a concession in that case that you need probable cause for each category of items you're searching in a phone. Um, I believe that the law is that this court is not required to adhere to their concession. And there are certainly instances where the government has changed position and courts have allowed that to happen. So I would. I believe it's not binding for all time. I think in this case, this court should consider it strongly. Okay. Can I ask you if we assume argue endo that the panel correctly found it was not bare bones as to the, um, let's say, texting and some other aspects of the phone. Where did you preserve the argument in the district court that the phones are different that I'm sorry that the photos are different? In other have a proper warrant on X, but not Y on the phone. Where did you? Thank you, Your Honor. And just to be clear, our positions always been that it's bare bones as to the entire phone. The government took the position that they get access to the entire phone. What the panel did is they agreed with me. In part, the panel agreed with the government. In part, that does not make it a new argument that makes it a thoughtful and reasoned opinion. But I will point this court to pages seven and eight of our motion before the district court pages 261 and 262 of the record. There we talk about particularized facts needed, and we do have a follow up sentence that says specifically the search warrant affidavits make no connection to why the officers needed to search photos to find additional evidence that he possessed drugs. So we do have some. You think that one sentence is enough to mean that you should weigh each part of the phone differently? Uh, or two of my argument, I guess, so that it's preserved here, perhaps. But I think that I think the government is correct. We weren't advancing that argument up to that point. Our position has been broader than what we actually got in the panel opinion. That doesn't make it a new argument. It doesn't mean that the panel opinion adopted a new argument means that the panel opinion agreed with some of what I said and disagreed with much of what I said. In that case, you're a listen. This is your heart. Um, in response to Judge Smith's questions, I might have missed it, but I don't think that you referenced the triplet opinion. Why are we not guided by that? And considering the officer's conduct in this case, I think the triplet opinion is a very good opinion. In this case, what this court said in triplet in 2012 very clearly is that police officers, to the extent practicable, should avoid viewing any innocent files in 2012. That wasn't very practical. Easier said than done today in 2021 with the celebrate technology described in the upturn amicus brief, police officers are very easily able to segregate different triplet is basically an obsolete opinion by way of technological advancement. Is that the position? Well, I don't think the triplet says that you can search the whole phone. What it says, and I'll quote from it. Although officers should limit exposure to innocent files in the end, there may be no practical substitute. So triplet allows for there to become a practical substitute, just like Justice Scalia talked about in Kylo. We now have that. So triplet is correct. We should have void exposure to innocent files rather than searching the entire phone just because we're out allowed to search one portion. Mr Back, this is Judge Costa. You started with the court alerted hand recognizing that the home is typically and historically where Fourth Amendment privacy interests have been at their zenith. Are you saying that the cell phones deserve not just as much protection is the home, but even more? And I guess the reason I'm asking is because let's assume there's probable cause to search someone's house for drug ledgers, which is what they were really looking for on your client's phone. That house house search wouldn't be limited to, you know, the bathroom or under the under the sink in the kitchen or this particular room. It would be go in the house and find those drug ledgers wherever they might be. So So that's why I asked the first question. It seems to me you need almost more protection than people have in a home since you're if the law requires, um, file by file probable cause for searches of a phone. So to answer your question, Your Honor, certainly in Riley versus California, the Supreme Court analogized a cell phone to a home using the privacies of life language from the Boyd case. But what the court in Riley went on to say is that and you're familiar with the language, the search of a cell phone will find more than what you see in the most exhaustive search of a home. Um, courts have found that to be a suggestion that cell phones are entitled to even more privacy, perhaps than a phone. So I think the problem is we shouldn't envision a cell phone as a container. Certainly Riley rejects that says that that analogy crumbles entirely, and we shouldn't envision a cell phone as a home. A cell phone is not even a neighborhood, but more like a city where you have many different components interacting in unique ways never before seen in human history. Mr Beck, what what probable cause relevance is there that your client was found not with one but with three cell phones? There's no relevance, Your Honor. And here's why. Because the affidavits themselves don't mention three cell phones and don't rely on the number of cell phones. Aguilar versus Texas 1964. The Supreme Court said we only go by what's in these affidavits, and I want the court to be very careful of the magistrate not have inferred from your client's choice to use multiple cell phones that perhaps he was using those in furtherance of illegal drug activity. I don't know. I don't think that's reasonable when we look at these affidavits because the police officer doesn't even say based on training experience or belief that multiple phones is an indication of drug trafficking or drug possession or anything else. Certainly there was Smith's question. There's no question they could arrest him. They could search his vehicle. They could question about anything they wanted. But when the government lists a bunch of facts that support probable cause, the important question is, did the officer rely on those facts in the search warrant affidavit? We can talk about speeding. Well, in reality, he was going 83 in a 75, and the officer mentioned speeding is the reason for the stop, but doesn't mention it as a reason for drug trafficking. The same would be true of the phones. In this case, Mr Beck, with the chief judge's permission, can I ask a question? Absolutely, Your Honor. Yes. Um, maybe along the lines of Judge Smith's question, you're framing your argument to us is a bare bones and lack of probable cause. Is that correct that you're not telling us that since there was no evidence taking that I can see in this record, we can't decide fact questions of good faith exceptions, plain view and exigency. And related to that related to that, are you not relying as I read scholars and even the Ninth Circuit to be saying the problem isn't the one you've identified. The problem is the use of plain view and computer searches. In other words, they appropriately have to get in or did get in, but it would be unreasonable to allow them later to use non responsive data. You haven't made that legal argument, but you're aware that it's out there in courts and scholarship. Correct? Uh, correct, Your Honor. So, uh, the first part of your question, we believe that this is one of the one this one of the only cases where there's enough evidence in the record to know why the police officers were seeking to search the phone. We see that most pointedly on page 275 of the record this memorandum, but we see it see it in several other places. So we're not abandoning the misleading the magistrates. But even if this court disagrees with that, and I understand it can be a hard sell, it at least provides the context of why we have the bare bones warrant. Now, as to your question on plain view, it's our position that the officers based on Freeman and Brown and other cases can only search for what they have probable cause to search for. Celebrate technology allows them to do that in line with triplet to only view non innocent files or things that they have probable cause to see if they're looking at text messages and call logs and other things that perhaps, as the panel said that they would be allowed to see. I disagree with going that far. Um, and they saw images there, perhaps embedded in a text message. That would be plain view. That would be fair game. But you can't. Okay, thank you. Okay, thank you. Thank you. It pleased the court. Amber Grand for the United States. The district court cited particularized facts in the search warrant affidavits alongside this court's well established precedent when it applied the good faith doctrine and denied Mr Morton's motion to suppress. The government is not asking the court to break any new ground or resolve any novel questions of constitutional law. It's simply asking the court to affirm that well reasoned decision because the searches here were pursuant to warrants. The burden is on Mr Morton to demonstrate that they were unreasonable. In other words, he has to identify the specific exceptions under Leon that would apply to the good faith doctrine. And on the record in this case, he has failed to identify any. And as a result, the district court's determination should be affirmed. The only exception identified by Mr Morton in the district court was the bare bones exception. That is the only argument that is preserved in the record. Of course, the affidavits in this case contain numerous particularized facts that would support a reasonable inference that evidence of the drug crimes would be found on Mr Morton's three cell phones to begin with in the same vehicle as two different types of drugs, 16 ecstasy pills disguised in an Advil bottle, the location on a commonly known drug court or in the middle of the night. Each of these facts gave rise to a fair inference that the cell phones would contain evidence of those drug crimes, that these facts were considered in addition to Trooper Blue's 14 years of general. They were specific of airments based on his experience as a law enforcement officer as to exactly what types of evidence were likely to be found in the cell phones that included both text and voice communications with the source of those drugs, photographs of the drugs or the supplier or the money that was paid for them. And as a result, his training and experience was properly supported the particularized facts of the offense and considered together preclude any finding that the affidavits here were bare bones. United States versus Gentry is an excellent example of the particularized facts of an offense when considered in conjunction with training and experience precluding any finding that the affidavits were insufficient to support the search in this case. This grand. Um, I think you waive time. Is that correct? That's right. Um, because you cited and I appreciate this, the very respected Fourth Amendment scholar or incur. Um, I looked at his scholarship. You cited a 2005 and a 2010 article. Are you aware that he has posted about this case supporting the panel's outcome and referring to his 2015 article that plain view cannot exist as it does when a computer search has been authorized? Yes, your honor. What would be a response to or incur be? Well, and in the 2015 article, he admitted that elimination of plain view would not be workable in the computer context. Since the general concept of seizure does not apply, you have the two stage searches where the data in essence has already been seized. So the concept of plain view doesn't really eliminating plain view would not eliminate his concerns. He, of course, advocated for use restrictions once that evidence had been discovered. However, there are a number of problems with that approach. And in fact, the Second Circuit decision Galpin that he, uh, relied on reached a contrary conclusion than he advocated for in that case and actually did not support the approach that he took. But one common sense problem with that would be the law enforcement would be disincentivized to investigate, um, any criminal offense if they're if they suspected additional criminal activity. So you might have an individual suspected of drug offenses, but who is also involved in a number of murders and law enforcement might feel that they couldn't look at his, um, digital devices, be it computers or cell phones for evidence of the drug crimes for fear that they might uncover evidence of the murder and not be able to use it simply because that no disrespect to my colleague or Miss Grand. But I don't think we're here to argue what professors are saying about this case. We're arguing about. We're here to discuss what how the lawyers presented. If I could just pursue my question, Miss Grand, those the scholarship you cited, and I'm very appreciative that you've actually read the subsequent scholarship. Would you agree to me that the problem here really is not the ex ante one? It is what happens when police have plain view authority to see anything, including, say, medical records. And if you agree with me, because that's my interest, it may not be other judges interest, but that's mine. What's the limiting principle? Sure. And I don't agree that it's a problem, but I do agree that a post search reasonableness analysis is how this question is best addressed, because every circuit court of appeals to look at ex ante restrictions has rejected that approach every single one. And as a result, the post search reasonableness question is the only way to address the questions that are raised here. Now, the court in Christie addressed what that what that question might look like. And the key takeaway from Christie is that you have to have preservation in the record to answer that question. Mr Morton at no time has challenged the scope or the methodology of the search in this case, and as a result, we have an absolute absence of evidence in the record to answer that question and cannot address post search reasonableness in this case. My question to you is why is this not a very simple case in which we decide the outcome on the basis of the way that the government framed the affidavit? And in the framing of the affidavit, it sought specific evidence from specific apps on a cell phone, and it's established probable cause for everything except for the photographs, because there is no that the basis for that, of course, was a conspiracy, which there is no evidence of in this case, and a large cash amount and drug transactions. So why can't we just decide it on a simple basis that they ask for specific information in particular categories and offer no probable cause of any kind to assert to search the category of photographs and leave it at that? I mean, it's just you don't have to rely on any case authority. It's just this simple general principle of applying the Fourth Amendment as it's been applied over the years. There's simply no probable cause to search for photographs. And let me make this one little comment and then you may respond, is that in looking at the return by the officers, they went directly to the photograph section. They tried to get, they wanted to get a device that would sort all of these matters out in the phone, but it would not work. They went directly to the way that the affidavit was framed and the way it was executed indicates that we are dealing with specific categories for which there must be probable cause, specifically with respect to the photographs. Now you can respond. I'd like to answer that question in two parts. First, the questions of over breadth and search methodology have not been raised or whether specific items of evidence were supported by probable cause. I'm just saying that all I'm saying is that is evidence of how this was, how the evidence was approached and how the issues were framed. We want photographs. Why do we want photographs? Because they will show pictures of drug trafficking. There's no probable cause to support drug trafficking. Therefore, there's no probable cause to ever get into the photographs as Yes, Your Honor. The affidavits, the government believes that the affidavits when given their plain reading, discuss photographs in the context of both drug possession and drug trafficking pictures. So the sentence specifically says images of drugs or proceeds or co-conspirators. And so read in full context, particularly because on the prior page on page three of the affidavit, it says trafficking, but in the possession or trafficking on the provision dealing with photographs, it says photos of the drugs or conspirators or money paid for those drugs. And as a result, um, could fairly when not given a, um, tell me how they, how this, this, this, this, uh, defendant was charged simply with possession as a consumer, possessor of drugs, uh, of two ounces of marijuana, for example, and a few pills in his pocket. And why is it necessary or why is it any probable cause to believe that he would have his picture taken, uh, under those circumstances when he was the purchaser of the, of the drugs? Why not? How is there any probable cause to believe that photographs would relate specifically to this crime? And that could come in two forms. One could be what we took, what law enforcement typically calls trophy photos of the drugs themselves. But the other is that in the digital context, communications are often evidenced in the form of photographs. So, um, the contacts in his phone would have an icon that would come in photograph form. Screenshots can be taken. In fact, the record shows that the child pornography in this case came about by pornography. We're talking about probable cause to believe that a consumer would have in his photograph section of his phone a an image of his purchasing two ounces of of of marijuana. I mean, that defies probable cause to believe that he would have done such a thing. Well, in this case, the affidavit would is is relying on the officer's training experience that those types of trophy photos would be found in the cell phones. What is a trophy photo of two ounces of marijuana? A purchase of two ounces of marijuana, particularly in this case where you have social drugs, marijuana or ecstasy. Those photos of the defendant using or possessing them would establish his knowing possession of the controlled substances. Is there likely a probable cause to believe that there would have been a photograph in his iPhone with respect to this transaction? That's nobody says that that's common. Well, consumers to have that picture taken when drug purchase and it doesn't necessarily have to be a photo of the drug purchase, but of his knowing possession of those drugs. And I do want to that's not that's not what it says in the affidavit. The affidavit leads off with photos of co conspirators. And then it says, as I read it, it says that the other photographic evidence might be the images of illicit drugs and currency derived from the sale of illicit drugs. Again, it goes to Judge Kelly's point. This is about trafficking, not possessions. And as far as it goes, you know, icons and contacts, those kinds of things, photos that might be in other parts of the phone. The affidavit doesn't even mention that the whole basis for the photographic search is what the officer said training and experience and those experiences and in his training relate to trafficking, not possession. That's not what the affidavit says. I mean, what you're saying is not what it says. Well, the affidavit says photos of the drugs, which in the government's who would support possession. But additionally, the facts of this case could have said that, right? All these things that you're explaining could have been said in the affidavit, correct? But they weren't. There's no evidence in the affidavit is that the three phones are evidence of drug trafficking. There is no evidence in the affidavit that he was 80 miles from home. Those are the factors that you rely on to suggest that he's in bereft of any evidence that he's engaged in drug trafficking. And that is the basis upon which you saw the picture says drug trafficking. Well, of course, as we explain in our brief, we believe there is probable cause to investigate whether he was distributing those substances. There were 16 ecstasy pills that is not defined in this party. And in addition to that, all of the circumstances your honor just mentioned, the court would be entitled to consider under footnote 23 of Leon, which says you consider all the circumstances of the case and not just the facts that are in the affidavit. In Massey, the court explained probable cause. It's not something we consider one fact at a time, but it's a layer of facts and that we have to consider a laminated total. And in order, even if this court disagrees, or even if the district court had disagreed with the magistrates, probable cause finding mere disagreement is not enough in Mr. Morton has to show that no reasonably well trained officer would have relied on those affidavit. It takes a dereliction of the magistrate's duty in order to find these affidavits were bare boned. And while it may be subject to reasonable consumers and possess it simple possession of two ounces of marijuana plus a few pills in his pocket, he would have had his picture taken with the sale transaction in which he purchased the particular drugs. Yes, that there will be probable cause to evidence the source or his knowing possession of those substances, which were, um, which was the evidence that the affidavit sought within the cell phone. When did he plead guilty to possession? Those charges were not pursued in the state court. As soon as the officers identified child pornography on the cell phones, this, of course, turned into a federal case. And my understanding is that the state court did not pursue the drug charges. Sir, I'm sorry. I thought he pled guilty of possession before they executed the search warrant. He was charged with possession after his arrest, but there was no guilty plea to those charges. Those charges were not pursued. It's grand. Let me ask you, uh, about something in the panel opinion resulted from a fairly rambling question that you were asked at that time, and then your answer gets quoted in the footnote. I'll try to tighten up better this time. The question was trying to reach the issue of getting back to what you're saying doesn't apply anymore. Whether there's any way to limit the warrant in advance in what could be searched for on a digital device, a phone in this case. And we talked about categories. It does seem to me that's problematic in light of all the discussions in the m bank briefing. Uh, you may have already answered this in the way you would you presented your argument. But you now take the position, and maybe you did then, and I can give you a chance to answer that. That even though the affidavit warrant here talked about categories that is not required, at least in a search of a phone categories of information such as we're talking about photographs, but text messages, phone logs, call logs, other specific categories that the warrants have to particularize the types of evidence that are sought. Calling it categories can be somewhat confusing. But, um, is and, of course, this particularity required will vary with each case. But here, of course, they particularize not only the offense under investigation, but the types of evidence that were sought within the cell phone. And that wouldn't necessarily correlate to what the court called categories. Um, also, it seems to me then that what you're really saying is that you've identified in response to other judges, uh, what you thought you might find. Are you saying that a warrant would be properly written that we want to search for evidence on this phone of drug possession? If we do end up saying that's the one thing there was probable cause for, would that be a proper warrant? Or is that too much that I can ramble through the entire house under a general warrant if that's all it says? Can you, uh, ask me that question one more time? I want to make sure I understand it. There I go rambling again. Let me try to make it a little clearer. Uh, it does seem to me that that what you're saying that you had a right to search for and why the photographs were relevant. It might be trophy photos. Is that you that law enforcement have the right to search for evidence of drug possession? Are you saying that an affidavit and warrant consistent with it that merely asked we want to search the phone and all it's all the ways we can search looking for evidence of drug possession? Is that how Riley should be applied? Another such case law now when we're talking about cell phone? Excuse me. If so, then you are sort of buying into Professor Kerr's argument that all of this is just a matter of whether you can use what you find thereafter. Right. So and whether it's drug possession or drug trafficking, the depend on the facts of that case. And here, if it had simply said drug possession and then set forth facts articulating why evidence of that possession would be found on the cell phones, then yes, there would be sufficient probable cause. Of course, here they were investigating not only possession, but whether he was redistributing those substances based on the facts of this case. But so long as the search warrant is particular eyes as to the offense under investigation and the types of evidence that there's a fair probability will be found, then the ex ante requirements under the Fourth Amendment have been satisfied. You're saying if you have probable cause for one item, you can search the entire iPhone. You can search anywhere that that item might objectively reasonably be located. So that will depend on the argument is made that the drug traffickers tried to evidence in different parts of the cell phone, and therefore we're entitled to search the entire cell phone to uncover what they may be hiding in in quarters cell phone that are unexpected. Do you buy into that? So it wouldn't be the entire cell phone. It would based on the data bases that are within the phone, the file extensions of the data, the forensic examiner would have to determine whether there is a reasonable probability that whatever the type of evidence you're looking for would be found. So if it's communication, if there's no probable cause here to believe that the crime here is drug trafficking or that this individual defendant was involved in drug trafficking, then there is no basis to search the photographs. We would disagree with that and say that photographs of simple possession. There was probable cause to search for photographs of possession and drug trafficking. That is what you rely on. If there's probable cause to believe that photographs would be found of his transaction that he was involved in or simple consumer possession when he is simply the purchaser of a small amount of drugs. It's that in addition to the communications that the panel found would be simple logic can also be evidenced in the form of photographs on the phone. But notwithstanding the fact that the affidavit says that the reason you are searching for photographs is because they often have trophy photographs of stacks of illicit drugs and cash as drug traffickers. You don't say anything in your affidavit. It's absolutely, as I understand it, you can If we conclude that he is only guilty of possession, the only crime here is possession and the probable cause has to ride or fall on possession, then you would you would concede that the photographs were not. There was no probable cause for photographs. I would not. The government maintains that there is probable cause to look for photographic evidence of the drug possession. Possession here of what he has as I mean, as you say, in your brief, the the the affidavit's probable cause here has to be tied to the crime at issue. That is simple possession. And you're saying that that there's evidence presented to the magistrate judge here that simple possession people of defendants have photographs of trophies as alleged in the search effort affidavit. Yes, Your Honor. And that would be based on the facts of the offense and trooper blues training and experience. Um, I did also run. This is Judge Costa. Is it the government's position that any time you find someone with a cell phone and drugs that there would be probable cause to search the cell phone, given what the officer says about knowing in his experience that drugs or communications often occur on phones? It is not. And the government strongly what's the limiting principle? What's different about these? Give me a scenario where that wouldn't be. It would not be probable cause. Uh, of course, it's gonna depend on the facts of the specific case. But if you had a more attenuated connection between the drug connection and the cell phones, if Mr Morton was arrested with drugs and his cell phone was at home or if the not support that evidence of his both his simple possession, the source of the drugs, the nature of his possession wouldn't be in the phones. Then you would have if my question really is if the cell phones found on him and the drugs are found in the car as well, there's gonna be probable cause in every case. Or is there some limit limitation? It would not be every case. Mr Morton claims that we're advocating for a bright line rule that every simple possession of drugs gets you the whole phone. And that's just not the case. Probable cause doesn't lend itself to bright line rules either on the prevalence of what would be a case where there wouldn't be probable cause where it's his phone. I get your points about it's not his phone or it's the phones at home, but the phones in his pocket and the drugs are found during a search of the car. Honestly, that's gonna be up to the magistrate to determine based on the specific facts that are under investigation. If the affidavit does nothing more than say he possessed a user quantity of drugs and possessed a phone, that's gonna be a much closer question than we have here. But here we have a lot more particularized facts that would support continuing the investigation to both prove up the simple drug possession and whether those substances were being redistributed. And as a result, the affidavits cannot be construed as bare bones. The only other issue that Mr Morton has raised in this case that would preclude application of the good faith exception is his claim that the subjective suspicions of the officers of additional criminal conduct somehow undercut that probable cause finding to search for drug evidence. Those claims failed both on their facts and on this court's well-established precedent. Mr. Morton makes much to do about the officers investigative reports and how they mention clues of him being a sexual predator, but he ignores the fact that in the very same sentence the officers state their purpose is to find evidence of drugs and investigate these other suspicions. The search warrant themselves limited the scope of the search to the drug offenses. He never challenged the scope or the methods of those search. And importantly, the record does not show that the officers went straight to the photographs in this case. While the investigative report says that they did look at the photos, the return in inventory filed the day after the search was executed shows that they seized contacts, call logs, text messages, audio and video files all pertaining to the drug offenses. Absent any record preservation on how this search was executed or the scope of the search that was conducted, Mr Morton cannot prevail on these claims and his post hoc cherry picking of the record should not be entertained by this court. In addition to the facts of this case, disproving any claims of pretext, the Supreme Court has been abundantly clear for decades that the Fourth Amendment reasonableness inquiry is an objective one. And in footnote 23, the Leon court specifically said we do not look at the subjective intent of law enforcement when evaluating the application of the good faith exception. As a result, any extension of any adoption of Mr Morton's claims about subjective intent would indeed present a novel question of law. It would be the first time this court or any other has applied it under Leon and would absolutely not refer you to the return on the affidavit return on the search warrant. It says Agent Roberts and myself. It says Agent Roberts attempted to download and was not able to do so. Agent Rogers and myself searched through the pictures on the cellular telephone. I mean, they went directly to the when the download failed, they went directly to the pictures according to the return on the search warrant. Well, that that's the investigative report, and it does not indicate that that's the first or the only place that they went. That was simply the turning point in the investigation. That simply demonstrates that when they did ask they went to my point being that they went immediately to the categories that had been identified in the affidavit once the download failed. So they went to the cell phone apps, including photographs. It does show that they that they access the photographs, but it does not demonstrate that that was the only thing or the first thing that I mean, it certainly suggests that they were searching the phone by apps, messages, telephones, all that sort of thing. I understand. Yes, this was a manual search when the cell bright, um, uh, software failed to connect with the device. That being said, the fact that it was a manual search doesn't, um, somehow invalidate the reasonableness of the search in this case, and certainly doesn't support. It does suggest that you need probable cause for each of the apps that you were searching. Well, typically, cell phone searches are not conducted by apps. In this case, there was, of course, a manual search. In this case, that certainly work right. But but the search warrants sought data types and not categories of information. And so in seeking to locate communications, text messages, call logs and photographs, um, they would have been able to look during a manual search at any application that might have had those capabilities that wouldn't necessarily be constrained to what the typical user would think of text messages. There are apps that have been developed to specifically hide that type of content disguised to look like a calculator or a gaming application. And so even if the search was manual, law enforcement would have had to check each of these applications to determine if they had that falls back into the argument that the, uh, people that people that the government is arguing, and that is that we're entitled to search that if we can find probable cause of one item, we can search the entire phone for everything because there may be hidden in there somewhere. I don't think we have to decide that in this case. But I mean, that's the argument that you're making. You're falling seems to me into that trap. When I see that my time is everything. I'm sorry, I've spoke over you. My argument is simply that one thing justified one probable cause for one thing justifies a search for everything. And if I could briefly respond, even though my time has expired, um, that question has to be resolved by post search reasonableness under this court's precedent in triplet. Um, and obvious. And as I have said, the method and scope of the search here is not an issue. So as your honor noticed, we don't need to reach that question today to resolve the issues that Morton has raised. And I would just briefly address the court's questions about the government's alleged concession from the last argument. I argued that case. I can represent to the court that I understood that question to be one of scope very much related to Judge Jolly's question as to whether you could simply go anywhere in the phone once you have probable cause to get to the phone. And my answer to the court simply represented this basic principle of Fourth Amendment reasonableness that you can only go, um, search data in the phone that is objectively reasonably likely to have the evidence that you seek within the cell phones and was certainly not intended to concede a question of ex ante requirements on cell phone searches. All right. Thank you. Thank you. Mr. Beck. Mr. Mr. Beck, let me ask you this. You have, uh, by the way, your microphone is still muted. Uh, you have indicated to us that there are no issues of first impression here, uh, and that the officer, uh, acted under existing law. And you have told us that the officer, uh, acted did not act in good faith and that he therefore violated the Fourth Amendment and did so intentionally. I means that based on the facts in this case, this officer could be successfully sued for money damages under Section 1983. I don't believe so, Your Honor. And I would refer this court to footnote 23 in the Leon opinion that the government decided. It talks about qualified immunity there. I think that that's a very difficult question that you've asked. I'm not knowledgeable enough to answer it with full confidence that has been addressed, though. Yeah, another question that I've been anxious to ask you since you wrote something very interesting in your opposition to in bank rehearing. In this case, you said, quote, court opinions are not laboratory specimens to be sliced, diced and analyzed under a microscope. And I found that kind of contrary. We spend a lot of time behind the scenes worrying about every phrase and every word of of our opinions. And it kind of surprises me that one of our federal public defendants would tell us that well, those exact words really, really don't matter. I don't quite know how you get from from here to there because it's contrary to what I think all the judges on this court try to do, which is to pay attention to every every word and every phrase so that the lawyers and the district judges and the public in general can understand what it is that we've said. Yeah. May I respond to that, Your Honor? I just want to ask the question for you to respond. Thank you. Certainly no disrespect. I have the total respect of this court. I'm citing a case kind of for the notion that we don't treat court of opinions the way we do statutes. We don't use cannons of construction in the same way when reading a court opinion as we do a statute. So take Riley, for example. It talks about categories of items. It also talks about areas within the phone with I believe the government was doing in its petition for panel rehearing was relying on language in a way that may be appropriate in the statute. But clearly with the panel, we knew what the panel was talking about here, and I believe the court was trying to make an issue that didn't exist in the panel opinion when you read it in its broader context. That's a little different than how you would approach a statute. That's the only point I was trying to make your honor. I would like to try to get to probably two points now on rebuttal. First, the fact that we know he possessed drugs to then be able to say we get to possess. We get to search, do a full search of the phone unless he just doesn't have a phone or doesn't have one on him. That same reasoning could apply to speeding, which the Supreme Court rejected in Riley. Whenever you're pulled over for speeding, you have committed a crime, and there's likely evidence of that crime on the phone. We cannot live in a world where police officers are searching everyone's phone for evidence of speeding to rummage for something else. Second, the government is ignoring the nexus requirement. The fact that a person possesses drugs gives the police police officers probable calls to arrest them. If it's in a vehicle, they have probable calls to search under the vehicle exception. They also have calls to question them about anything they want under United States versus causing. But what the police officers need is a nexus, something connecting that activity to the phone beyond the mere ubiquity of phones. Riley says that because everyone has one, the fact that a Martian would believe it's part of human anatomy is a reason to have more privacy protection, not less. And then I would simply refer this court to the bare bones language, the quintessential bare bones language described in Satterwhite and in Brown and say that we see that exact same thing here. We see training and experience as to how bones work. But when we're talking about what Mr Morton did, it only says belief, and that is bare bones to its very core. And we asked this court to reverse. And I thank you very much for your time that will conclude the arguments this morning. The court is adjourned until nine o'clock tomorrow morning.